IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PATRICIA LOCASCIO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-5339 |
| ) | |
| ) | Jury Demanded |
| **ENTERPRISE COMMUNITY ASSET** ) | |
| **MANAGEMENT, INC.,** a Maryland ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

Plaintiff, Patricia LoCascio ("Plaintiff"), by her undersigned attorneys, complains of Defendant, Enterprise Community Asset Management, Inc. ("Defendant"), as follows:

## JURISDICTION AND VENUE

1. Plaintiff is alleging claims herein pursuant to: the Americans With Disabilities Act Amendments Act of 2008, 42 U.S.C. 12101, *et seq.* (the "ADAAA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA"); and the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.* (the "Whistleblower Act"). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367, and 42 U.S.C. § 2000e. *et seq.*

2. Venue is proper in this judicial district under 28 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) as Defendant is conducting business in the Northern District of

Illinois, and alleged unlawful employment practices were committed within this judicial district.

## PARTIES

3.  Plaintiff is an adult female residing in Hobart, Indiana, who was employed by Defendant from or about June of 2009, until her abrupt termination on May 12, 2015. At all relevant times, Plaintiff worked at Defendant's offices located at 230 West Monroe St., Chicago, Illinois (the "Chicago Office"), and most recently held the title of Senior Manager Asset Resolution.

4.  Defendant is a Maryland corporation doing business in this judicial district and having a place of business at the Chicago Office. At all relevant times, Defendant employed 15 or more persons for each working day in each of twenty or more calendar weeks in 2015 and the preceding calendar year.

## PROCEDURAL REQUIREMENTS

5.  On or about July 30, 2015, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"). Plaintiff's Charge of Discrimination was timely filed within 300 days after the alleged unlawful employment practices occurred.

6.  On or about February 19, 2016, the EEOC issued Plaintiff her Notice of Right-to-Sue letter, and this action has been timely brought less than 90 days after Plaintiff's receipt thereof.

7.  Plaintiff has also completed each and every administrative prerequisite prior to commencing this action.

8.  During the course of her employment with Defendant, Plaintiff complied with all requests made upon her, satisfactorily performed her job duties, and received

positive job evaluations, regular salary raises, and congratulatory notices and group recognition from management for her good work performance, and other benefits of employment.

9. On May 12, 2015, Plaintiff was abruptly terminated by Defendant due to a purported "reduction in force."

## COUNT I
## (VIOLATIONS OF THE ADAAA)

1. Plaintiff adopts and re-alleges paragraphs 1 - 9 above as paragraph 1 of Count I.

2. At all relevant times, Plaintiff suffered from a serious medical condition, *i.e.* a gastro-intestinal/bowel disorders, as well as a cardiac condition causing an irregular heartbeat, which medical conditions required various medical treatments and surgical procedures – and about which she was questioned by Defendant's management.

3. At all relevant times, Plaintiff had a record of a disability, had a disability and/or was regarded by Defendant as an "individual with a disability" within the meaning of the ADAAA in that she suffers from serious digestive/gastro-intestinal disorders that substantially limit her major life activity of digestion and related functions, as well as a cardiac condition substantially limiting or affecting her body's vascular system and ability to circulate blood.

4. In or about the fall of 2014, Plaintiff required medical treatment for her gastro-intestinal/bowel disorder. Her immediate supervisor, Jeff Connolly ("Connolly") questioned her about her medical condition, and her need to take time off from work for treatment in the hospital (in or about November of 2014).

5. After returning to work, Connolly, *inter alia,* began to: (a) harshly and unfairly criticize Plaintiff and her work; (b) impose unreasonable project completion deadlines on her; (c) require her to attend weekly "status meetings" during which she was often berated and interrogated about the status of her projects; and (d) require Plaintiff - and *only* Plaintiff - to submit written status reports to him.

6. Connolly also told Plaintiff that when *his* wife had medical problems, she stopped working – seemingly suggesting to Plaintiff that *she* should to do likewise given her medical conditions.

7. Plaintiff also required surgery for her digestive condition on or about February 26, 2015, and her medical leave was approved by Defendant's Human Resources Department under the FMLA.

8. At all times relevant, Plaintiff was also qualified and able to perform her essential job functions - with or without a reasonable accommodation - within the meaning of the ADAAA.

9. Plaintiff's abrupt termination of employment by Defendant, as alleged above, violated the ADAAA because Defendant unlawfully terminated her because of one or more covered disabilities, as alleged, her record thereof, and/or Defendant's unlawful perception of her as being disabled.

10. As a direct and proximate result of Defendant's violations of the ADAAA, Plaintiff has also lost, and will continue to lose, income, including, but not limited to wages, raises, insurance and other employment benefits. Plaintiff has also suffered resulting severe emotional distress, pain, outrage and humiliation.

11. The above-described conduct by Defendant was willful, wanton and/or with reckless indifference to Plaintiff's federally protected rights under the ADAAA, and warrants the imposition of punitive damages against Defendant.

**WHEREFORE**, Plaintiff, Patricia LoCascio, prays that this Honorable Court grant the following relief:

A. Advance this case on the docket, order a speedy hearing or trial at the earliest practical date, and cause this case to be expedited in every possible way;

B. Grant judgment in favor of Plaintiff and against Defendant for compensatory damages for emotional pain, misery, suffering, and for punitive damages, in the sum of $300,000 or as otherwise permitted by the ADAAA, and as may be determined at trial;

C. Award Plaintiff her costs of litigation, including witness fees and reasonable attorney's fees incurred in connection with this action;

D. Award Plaintiff her lost back pay and lost job benefits, as well as lost front pay and job benefits, plus interest, so as to render her whole from the unlawful termination or, in the alternative, reinstatement if appropriate; and

E. Grant Plaintiff such further relief as this Court deems just and appropriate.

## COUNT II
## (RETALIATION IN VIOLATION OF THE FMLA)

1. Plaintiff adopts and re-alleges Paragraphs 1-2, and 4-7 of Count I as Paragraph 1 of Count II.

2. At all times relevant, the FMLA provided, *inter alia*, that Plaintiff, as an eligible employee, shall be granted up to 12 weeks of unpaid leave for her serious medical condition(s) which prevent her from performing one or more essential job functions and, upon her return to work from her FMLA leave, she is entitled to her former job position/duties (or a substantially similar position with equivalent pay, benefits, and terms of employment). Any form of retaliation against Plaintiff for exercising her FMLA rights is unlawful.

3. Defendant's decision to terminate Plaintiff from her employment was unlawful in that it was motivated by, or because of, she exercised her lawful rights under the FMLA for treatment of her medical conditions, as alleged above, including hospitalization from or about February 26, 2015 through or about May 11, 2015.

4. As a direct and proximate result of Defendant's unlawful termination of Plaintiff's employment in violation of the FMLA, she has and will continue to lose income, including but not limited to wages, raises, insurance and other employment benefits.

5. Defendant's termination of Plaintiff from her employment, *inter alia,* in violation of the FMLA was willful, wanton, and/or with reckless indifference to Plaintiff's federally protected rights and warrants the imposition of liquidated damages thereunder.

**WHEREFORE,** Plaintiff, Patricia LoCascio, prays that this Honorable Court grant the following relief:

A. Advance this case on the docket, order a speedy hearing or trial at the earliest practical date and cause this case to be expedited in every possible way;

B.  Award her appropriate lost back and lost future earnings, and other employment related losses and benefits since her termination of employment, plus interest so as to render her whole from the unlawful termination;

C.  Award her an additional amount as liquidated damages equal to the lost back wages/salary, employment benefits, and other compensation denied or lost by reason of Defendant's violations of the FMLA;

D.  Award her costs of litigation, including witness fees and reasonable attorneys' fees pursuant to the FMLA; and

E.  Grant her such further and additional equitable relief as this Court deems just and appropriate.

## COUNT III
## (RETALIATION IN VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT)

1.  Plaintiff adopts and re-alleges Paragraphs 1-4 and 8-9 of the preliminary allegations above, as Paragraph 1 of Count III.

2.  At all relevant times, Section 20 of the Whistleblower Act provided, *inter alia*, that "(a)n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal law, rule or regulation..."  Further, at all relevant times, Section 10 of the Whistleblower Act provided, *inter alia, that* "[a]n employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. "

3. At all relevant times during her employment, Plaintiff refused to follow certain directives by Defendant, and/or otherwise refused to participate in one or more activities that she reasonably believed violated one or more state or federal laws, rules or regulations.

4. Specifically, Plaintiff became aware of, and/or had a reasonable good faith belief that Defendant had, *inter alia,* been:

(a) improperly funding government subsidized housing projects in South Dakota, for Native-Americans, known as the "Oti Kaga" projects by, *inter alia,* failing to comply with certain IRS laws, rules, regulations, or protocols for tax credits (including under Section 42 of the Internal Revenue Code);

(b) violating the material terms of governing HUD grant(s); and

(c) violating one or more material terms of the Oti Kaga project partnership agreements - which had been approved and were regularly monitored by the South Dakota Housing Development Authority (the "SDHDA").

5. In addition, Plaintiff became aware of, and/or had a reasonable good faith belief that Defendant had also been *preventing* certain individuals and government agencies responsible for monitoring said projects from discovering various violations, including:

(a) misappropriation and theft of insurance claim proceeds by employees, members of the Oti Kaga projects' property management, and its general partner;

(b) misappropriation and/or misuse of Oti Kaga projects' funds/rents;

(c) inadequate physical maintenance of one or more Oti Kaga project properties;

    (d) incomplete and/non-compliant Oti Kaga projects' lease files;

    (e) improper funding of Oti Kaga financial shortfalls; and

    (f) other improper and unlawful activities concerning the Oti Kaga projects.

  6. In view of the foregoing, and in addition to insisting that the Oti Kaga property manager, and its general partner, be replaced, and refusing to continue to work or fully cooperate with them, Plaintiff also refused to follow other improper directives from Connolly that she not disclose certain required compliance and salient related financial and operational information about Oti Kaga projects to the projects' accountant, Defendant's Indian Affairs representative(s), and others.

  7. Learning that a project consultant had provided information regarding project non-compliance to SDHDA (which at all relevant times was responsible for administration of applicable project housing tax credits), Connolly fired the project consultant and sternly warned Plaintiff not to divulge required compliance and salient financial information about Oti Kaga.

  8. Plaintiff refused to follow Conolly's improper instructions, and disclosed various required compliance and related financial information about the Oti Kaga projects that she reasonably believed was required to be disclosed.

  9. As a result, Connolly angrily rebuked Plaintiff, eventually removed her from any further role or participation in the Oti Kaga projects, excluded her from all related meetings and communications, and told her that he no longer trusted her.

  10. Defendant's actions against Plaintiff, including its decision to terminate her employment, were retaliatory and the result of her refusal to engage or participate in

conduct that she reasonably believed would violate governing law(s), rules or regulations - as prohibited by the Whistleblower Act.

10. The aforesaid retaliation against Plaintiff was intentional and/or in willful disregard for her legally protected rights under the Whistleblower Act.

11. As a direct and proximate result thereof, Plaintiff has been damaged in that she has lost, and will continue to lose, income, employment benefits, and other compensation from Defendant, has suffered emotional distress and humiliation, has incurred legal fees and expenses, and has sustained other related damages.

## Relief Sought

**WHEREFORE**, Plaintiff, Patricia LoCascio**,** prays that this Honorable Court grant the following relief:

A. Reinstate her to her former position at Defendant, with the same seniority status that she would have had but for the subject violations of the Whistleblower Act, or alternatively, an appropriate award of front pay;

B. Award Plaintiff appropriate lost back pay, benefits, and reimbursement for other employment related losses since May 12, 2015, plus interest, so as to render her whole from the unlawful termination;

C. Award Plaintiff compensatory damages for emotional stress, humiliation and anxiety, in an amount to be shown at trial, and as authorized by law;

D. Award Plaintiff any additional compensation, including her litigation costs, expert witness fees, and reasonable attorney's fees as authorized by 740 ILCS 174; and

      E. Grant Plaintiff any additional relief as may be warranted.

                Respectfully submitted,

                By: s/Randall B. Gold
                One of Her Attorneys

Randall B. Gold, Esq. (Bar. No. 6190918)
FOX & FOX, S.C.
111 East Wacker Drive
Suite 2600
Chicago, IL 60601
312-526-3220
rgoldlaw@aol.com

Renee F. Kessel, Esq. (Bar No. 1453440)
55 W. Delaware Place
Suite 603
Chicago, IL 60610
312-608-8181
Rfk54321@yahoo.com